**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Mylon Bailey,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 04 C 0042** |
| **v.** ) | |
| ) | **Mag. Judge Michael T. Mason** |
| **JO ANNE B. BARNHART,** ) | |
| **Commissioner of the Social Security** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Michael T. Mason, United States Magistrate Judge:

Plaintiff, Mylon Bailey ("Bailey"), has brought a motion for summary judgment seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"). The Commissioner denied Bailey's claim for Supplemental Security Income ("SSI") under the Social Security Act ("Act"), 42 U.S.C. §§ 416(i). The Commissioner filed a cross-motion for summary judgment asking the Court to uphold the decision of the Administrative Law Judge ("ALJ"). Bailey also filed a motion for remand pursuant to sentence six of 42 U.S.C. § 405(g). We have jurisdiction to hear this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the following reasons, we grant Bailey's motion for summary judgment, deny the Commissioner's cross-motion for summary judgment and deny Bailey's motion for remand pursuant to sentence six of 42 U.S.C. § 405(g). This case is remanded to the ALJ for further proceedings consistent with this opinion.

**Procedural History**

Bailey protectively filed an application for SSI on July 13, 2000.[1] Bailey's application and subsequent request for reconsideration were both denied. Bailey then requested and was granted a hearing on May 14, 2002 before ALJ John K. Kraybill. Bailey and a vocational expert ("VE"), Stanley Hunton, testified. On June 6, 2002, ALJ Kraybill issued a written opinion denying Bailey's request for benefits. The Appeals Council denied Bailey's request for review and ALJ Kraybill's decision became the final decision of the Commissioner.[2] *See Zurawski v. Halter*, 245 F.3d 881, 883 (7th Cir. 2001). Bailey subsequently filed this action in the district court.

**Factual Background**

***A. Medical Evidence***

Bailey was diagnosed with a herniated disc at L5-S1 with displacement of the right S1 nerve root, disc degeneration at L5-S1, hypertension, affective disorder and depression secondary to chronic pain. The medical evidence Bailey presented to the ALJ included medical records from the Edward Hines Veterans Administration Hospital ("Hines"), three separate consultative examination reports, a psychiatric review, two separate physical residual functional capacity ("RFC") assessments, and a mental RFC assessment.

Bailey was examined on July 10, 2000 at Hines for lower back and foot pain, but x-rays showed no abnormalities. (R. 162-63). The x-ray of the lumbar spine showed

---

[1] Bailey had previously filed a claim for SSI that was denied on September 24, 1999. Bailey asks us to direct the Commissioner to reopen the prior claim in the event we find that he is disabled. However, federal courts lack jurisdiction to review the ALJ's refusal to reopen a claim. 42 U.S.C. 405(g); *Califano v. Sanders*, 430 U.S. 99, 108 (1977).

[2] Subsequently, Bailey protectively applied for benefits September 18, 2002, and was granted benefits without a hearing on March 10, 2004.

normal alignment and the x-rays of Bailey's feet showed no spurs. *Id.* On September 20, 2000, Bailey had an MRI of his lumbar spine taken. (R. 225). The MRI showed normal alignment of the spine but it indicated that Bailey had a herniated disc at L5-S1 with displacement of the right S1 nerve root and disc degeneration at L5-S1. (R. 225). The Hines records also indicate that Bailey's hypertension was being successfully treated with diet and medication. (R. 156-60).

On September 28, 2000, Dr. Sanjay Pethkar performed a consultative examination on Bailey. (R. 164-67). During the examination, Bailey complained of lower back pain radiating into his legs. (R. 164). Bailey claimed that he was told that he had a herniated disc. *Id.* Bailey reported that he experienced severe back pain when walking, sitting down or even doing minimal activities. (R. 166). Bailey also complained of bilateral feet pain and claimed that he was told he had developed spurs in both feet. (R. 164).

Dr. Pethkar found evidence of muscle spasm associated with slight muscular atrophy. (R. 166). He noted that there was a decreased range of motion in the lumbar spine with forward flexion limited to 60 degrees. *Id.* Dr. Pethkar indicated that muscle atrophy was present in the lumbar area. *Id.* He also noted that there was a slight diminishment of sensation to pinprick over both lower legs and that reflexes were depressed on the right leg. *Id.* Bailey reported to Dr. Pethkar that he had undergone physical therapy, epidural shots, and had been recommended for but refused surgery. (R. 164, 166). Dr. Pethkar observed that Bailey did not require the use of any assisting devices for ambulation and that he was able to carry out the activities of daily living, including driving, without complication. (R. 166).

Dr. Stanley Burris completed a physical RFC assessment of Bailey dated October 30, 2000. (R. 170-176). The RFC indicated that Bailey could lift twenty-five pounds frequently, and fifty pounds occasionally. (R. 170). The assessment also indicated that Bailey could stand, walk, or sit for six hours out of an eight-hour workday with normal breaks. (R. 170). The RFC listed Bailey's non-exertional limitations as the inability to climb ladders, ropes, and scaffolds. (R. 171). Dr. Burris noted that while Bailey claimed he had been told he had spurs in both feet, x-rays taken on October 13, 1999 showed no spurs. (R. 176, 163). Dr. Burris also noted that while Bailey claimed he suffered back pain with radiation to both legs, there was no evidence in the record that Bailey had epidural shots or went to physical therapy. *Id.* Further, Dr. Burris found that there was no record that an MRI had been taken, that surgery was recommended or that Bailey had a herniated disc. *Id.*

Bailey underwent a consultative examination with Dr. Elsy Devassy on April 2, 2001, which focused on Bailey's psychological condition. (R. 177-78). Dr. Devassy noted that Bailey drove himself to the examination, and that he did his own cooking, cleaning, shopping, and other household chores. (R. 177-78). Bailey admitted to being depressed because of his back pain and financial difficulties. (R. 177). Dr. Devassy diagnosed Bailey with depression secondary to chronic pain, and determined Bailey's global assessment of functioning ("GAF") was about 50-60.[3] *Id.*

---

[3] The GAF scale measures psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness, and does not include impairment in functioning due to physical limitations. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision 32 (2000)). The GAF scale ranges from 0-100. *Id.* A range of 50-60 is indicated for persons with "moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers)." *Id.* at 34.

Following the consultative exam with Dr. Devassy, a psychiatric review was performed by a Disability Determination Services ("DDS") physician, Dr. Kirk Boyenga, on May 17, 2001. (R. 179-192). Dr. Boyenga indicated that Bailey suffered from an affective disorder characterized by sleep disturbance and decreased energy. (R. 182). Dr. Boyenga noted that Bailey's restriction of daily living activities was mild, but that he had moderate difficulties functioning socially, and maintaining concentration, persistence, or pace. (R. 189).

Dr. Boyenga also completed a mental RFC assessment. (R. 193-96). The assessment indicated that Bailey's ability to maintain attention and concentration for extended periods was moderately limited. (R. 193). Furthermore, the assessment stated that Bailey's ability to complete a normal workday and perform at a consistent pace without an unreasonable number of rest periods was also moderately limited. (R. 194). Dr. Boyenga opined that notwithstanding Bailey's impairments, he was capable of performing both simple and detailed tasks as well as routine and repetitive tasks. (R. 195).

On May 18, 2001, Dr. Shahid Masood performed another physical consultative examination on Bailey. (R. 197-199). Dr. Masood noted that Bailey had significant tenderness that was moderate to severe in the lower lumbar region with some paraspinal muscle spasms, and that Bailey could only lift his right leg 10 degrees and his left leg 25 degrees. (R. 197). Further, Dr. Masood noted that Bailey was relying on a cane when he came to the exam, and required assistance to sit up from a lying position. (R. 197). Dr. Masood's impression was that Bailey was in moderate to severe distress from severe backache, most probably sciatica. (R. 198).

On May 31, 2001, Dr. Paul Smalley completed a final physical RFC assessment. (R. 200-207). The results of the second physical RFC assessment were almost the same as the first RFC assessment. The second RFC indicated that Bailey could lift 50 pounds occasionally, 25 pounds frequently, and could sit and/or stand for 6 hours in an 8-hour workday. (R. 201). The only limitations placed on Bailey were the non-exertional limitations that he could not climb ladders, ropes or scaffolds. (R. 202). Dr. Smalley concluded that Bailey was capable of performing "medium work." (R. 207). Dr. Smalley also noted some discrepancies between Bailey's allegations and the objective medical evidence, specifically his inconsistent use of a cane and his refusal to follow up on recommended surgery or rehab despite his claims of being in severe pain. (R. 207). Dr. Smalley further observed that despite Bailey's allegations that he had a herniated disc that was documented by MRI, treated with injections and that surgery had been recommended, the medical records showed only a negative lumbar x-ray. *Id.*

### B. Bailey's Testimony

Bailey testified at the administrative hearing before ALJ Kraybill on May 14, 2002. He stated that the main reason why he was unable to work was because the heel spurs in his feet made his feet swell and prevented him from staying on his feet for too long. (R. 48). He also stated that his back made it uncomfortable for him to sit in one position for very long. (R. 48). Bailey testified that he could only stand for about one to two hours, that he could only walk about a block, and that he could lift 30-40 pounds, but would "notice it" in a couple of hours. (R. 51-52). Bailey further testified that his constant pain made it difficult for him to sleep. (R. 51).

Bailey also testified that he did not do his own cooking, cleaning, shopping, or household chores. (R. 50-51). He stated that the medication he took for pain sometimes made him dizzy or sleepy. (R. 46). Bailey was prescribed Methocarbomal, Rofecoxib, acetaminophen with codeine, Lipsinopril and Naproxin. (R. 44-45, 161-162).

Bailey further testified that he had been asked to leave his last job as a security guard because he fell asleep on the job, and that he no longer drives following a car accident that he attributes to his drowsiness. (R. 54-58). Bailey also explained his prior job history; that he had been a handyman sporadically, a bricklayer's helper, he had delivered furniture and had worked part-time as a cleaner for a couple of months. (R. 47, 72). Bailey's work history report also indicates that he had done some carpentry work and worked as a deck hand in the 1970's and 1980's. (R. 124).

### C. Vocational Expert's Testimony

The administrative hearing concluded with the testimony of VE Stanley Hunton. The ALJ presented the VE with the following hypothetical person: a 53-year-old man with a GED whose work experience ranges from semiskilled, heavy work to light, unskilled work. (R. 74). The hypothetical person has been receiving treatment for complaints of back pain, the person also complains of foot pain and has been diagnosed with an affective disorder. *Id.* Furthermore, the hypothetical person's medications do not pose a significant effect on his ability to work. *Id.* Before asking the VE whether there were any jobs in the relevant market that the hypothetical person could perform, the ALJ placed the following limitations on the VE's analysis: the job required no more than a medium RFC, did not involve climbing of either ladders or

scaffolds, was limited to work of a routine and repetitive nature, and did not involve prolonged or extensive public contact. (R. 75).

Based on the ALJ's hypothetical, the VE testified that there were approximately 4,700 jobs in the Chicago metropolitan area that would fit the stated limitations. (R. 75). Specifically, the VE indicated that there were 2,000 hand packager jobs, 1,500 product inspector positions, and 1,200 packaging and sewing machine operator positions available that the hypothetical man could perform. (R. 75). However, the VE qualified his response by stating that the hypothetical person would need to be able to sustain the pace of repetitive work to maintain such employment. (R. 75). Further, the VE testified that an individual whose ability to sustain pace was moderately affected would be unable to perform these jobs. (R. 75, 77). The VE also testified that the hand packer job would require considerable bending. (R. 77).

**THE SUMMARY JUDGMENT MOTIONS**

**Standard of Review**

We must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is more than a scintilla of evidence and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Diaz v. Chafer*, 55 F.3d 300, 305 (7th Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). We must consider the entire administrative record, but we will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d

535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

We will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Id.* While the ALJ "must build an accurate and logical bridge from the evidence to [his] conclusion," he need not discuss every piece of evidence in the record. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). The ALJ must "sufficiently articulate [his] assessment of the evidence to 'assure us that the ALJ considered the important evidence… [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (per curiam) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985)).

**Legal Analysis**

Whether a claimant qualifies to receive SSI benefits depends on whether the claimant is "disabled" under the Social Security Act. A person is disabled under the Act if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon*, 270 F.3d at 1176. The claimant

has the burden of establishing a disability at steps one through four. *Zurawski v. Halter*, 245 F.3d 881, 885-86 (7th Cir. 2001). If the claimant reaches step five, the burden then shifts to the Commissioner to show that "the claimant is capable of performing work in the national economy." *Id.* at 886.

ALJ Kraybill applied the five-step analysis. His findings with respect to steps one through four are not contested. At step one, ALJ Kraybill determined that Bailey has not engaged in substantial gainful activity since the alleged onset of the disability. (R. 23). At step two, the ALJ found that Bailey has a "combination of impairments considered 'severe' based on the requirements in the Regulations…." (R. 23). At step three, ALJ Kraybill found that Bailey's medically determinable impairments did not meet or medically equal one of the impairments listed in the regulations. (R. 23). At step four, the ALJ determined that Bailey was unable to perform any of his past relevant work. (R. 24).

At step five, the ALJ found that despite Bailey's non-exertional limitations, "there are a significant number of jobs in the national economy that he could perform." (R. 24). Based on testimony of the VE and considering Bailey's age, education, past relevant work experience and RFC, ALJ Kraybill concluded that Bailey is "capable of making a successful adjustment to work that exists in significant numbers in the national economy." (R. 23-24). Therefore, the ALJ reached a finding of "not disabled." (R. 23).

Bailey argues that the ALJ erred in his step five analysis because: (1) the ALJ failed to adequately explain his finding that Bailey could perform a significant number of jobs in the national economy; (2) the ALJ's finding that Bailey has the RFC to perform a restricted range of light work is not supported by substantial evidence; (3) the ALJ

erroneously characterized Bailey's global assessment functioning ("GAF") of 50-60 as "quite high"; and (4) the ALJ failed to consider the side effects of Bailey's medication in determining his ability to work.

## A. The ALJ Failed to Adequately Explain His Finding

Bailey first argues that the ALJ failed to adequately explain his finding that there are a significant number of jobs in the national economy that Bailey could perform. The ALJ's decision must be based on all relevant evidence in the record. *Smith v. Apfel*, 231 F.3d 433, 438 (7th Cir. 2000). While the ALJ is not required to address every piece of evidence, he may not select evidence which favors his conclusions without articulating reasons for accepting or rejecting entire lines of evidence. *Cichon v. Barnhart*, 222 F. Supp. 2d 1019, 1029 (N.D. Ill. 2002). Furthermore, the ALJ must rationally articulate a basis for his decision to enable us to trace the path of his reasoning. *Steele*, 290 F.3d at 941; *Carlson*, 999 F.2d at 181.

Here, when the ALJ asked the VE whether there were any jobs that a hypothetical person with Bailey's limitations could perform, the VE responded affirmatively. (R. 75). However, the VE expressly qualified his response, adding, "if [the hypothetical person] could sustain the pace of a [sic] repetitive work, there would be [jobs available in the national economy that the hypothetical person could perform]…." (R. 75) (emphasis added). The VE testified that if the person's "ability to sustain the pace were moderately effected [sic], then it—you know, that means he basically couldn't sustain a production pace, therefore, he couldn't maintain employment." (R. 75). Bailey's counsel asked the VE to clarify his response to the ALJ's hypothetical. (R. 76). The VE testified that if the hypothetical person's ability to maintain pace were

11

moderately limited, then that person would not be able to perform any of the jobs the VE had listed. (R. 77).

In his opinion, the ALJ made an express finding that Bailey has "moderate difficulties with maintaining concentration, persistence, and pace…." (R. 20). Furthermore, the medical evidence in the record supports the finding that Bailey's ability to maintain pace is moderately limited. (R. 189, 193-94). Despite the medical evidence, the ALJ's express finding about Bailey's ability to maintain pace and the VE's testimony, the ALJ concluded that there are a significant number of jobs in the national economy that Bailey could perform (including jobs as a hand packager, product inspector and sewing machine operator). (R. 24).

The Commissioner argues that there is sufficient evidence in the record to support the ALJ's finding notwithstanding the testimony of the VE. The Commissioner points to the mental RFC assessment in which Dr. Boyenga stated that Bailey could perform simple and detailed repetitive tasks despite his limitations. (R. 195). While this constitutes some evidence of Bailey's ability to perform repetitive-type jobs, the ALJ did not reference this evidence to support his finding that there are a significant number of jobs in the national economy that Bailey could perform. (R. 18-24).

Regardless of whether there is enough evidence in the record to support the ALJ's decision, the ALJ must build an accurate and logical bridge from the evidence to his conclusion. *Steele*, 290 F.3d at 941; *Dixon*, 270 F.3d at 1176. ALJ Kraybill failed to build such a bridge and consequently, remand is appropriate. While the ALJ relied on the VE's testimony to conclude that Bailey could perform a significant number of jobs in the national economy, he failed to explain how he reached that conclusion in light of his

12

specific finding that Bailey has difficulty maintaining pace and the VE's testimony that Bailey could not perform those jobs if his pace were moderately limited. On remand, the ALJ must resolve this inconsistency and articulate a basis for his conclusion that there are a significant number of jobs in the national economy that Bailey could perform.

## B. The ALJ's RFC Finding is not Supported by Substantial Evidence

Bailey next argues that the ALJ's finding that he has the RFC to perform a restricted range of light work is not supported by substantial evidence. In particular, Bailey contends that the ALJ failed to consider the fact that he would be required to do occasional bending and stooping. *See* SSR 83-14, 1983 WL 31254, *2 (1983) (recognizing that to perform substantially all of the exertional requirements of light work, a person would need to stoop occasionally). We agree.

The ALJ's decision contains no discussion of Bailey's limited ability to bend on account of his bad back. Dr. Pethkar's consultative examination report indicates that Bailey's "forward flexion [is] restricted to 60 degrees." (R. 166). Bailey contends that while the ALJ's opinion references this report, he provides no basis for rejecting Dr. Pethkar's observations as to Bailey's limitations in forward flexion. In response, the Commissioner argues that neither Dr. Smalley nor Dr. Burris opined that Bailey had any limitations on bending or stooping. (R. 171, 202). However, the reports of Dr. Pethkar on the one hand and Drs. Smalley and Burris on the other establish conflicting assessments of Bailey's bending and stooping ability. Despite his obligation to do so, the ALJ failed to address and resolve this conflict. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003). Furthermore, while Dr. Pethkar's report references the MRI showing disc herniation at L5-S1, the records reviewed by Dr. Smalley and Dr. Burris

13

did not include Bailey's MRI. (R. 176, 207). The ALJ failed to take into consideration the fact that the non-examining physicians did not have access to all of the relevant medical records when they determined that there were no limitations on Bailey's ability to stoop.

We cannot conclude that the ALJ's RFC finding is supported by substantial evidence because the ALJ failed to consider or address Bailey's limitations in forward flexion and he failed to resolve the conflicting assessments of Bailey's ability to stoop. Accordingly, the ALJ must address these issues on remand. *See Lopez*, 336 F.3d at 539 (recognizing that courts will not let the Commissioner's decision stand if it lacks evidentiary support or an adequate discussion of the issues).

## C. The ALJ's Characterization of Bailey's GAF

Bailey also argues that ALJ's characterization of his global assessment functioning ("GAF") of 50-60 as "quite high" is erroneous and constitutes the substitution of the ALJ's lay opinion for that of an expert mental health professional. *Id.* While an ALJ's substitution of his lay opinion for that of an expert generally constitutes reversible error, we find that the ALJ did not substitute his lay opinion here. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996). To the contrary, the ALJ acknowledged the existence of a medically determinable mental impairment and concluded that Bailey "has mild difficulties with his activities of daily living and social functioning, and moderate difficulties with maintaining concentration, persistence, and pace…." (R. 20). This finding is entirely consistent with a GAF of 50-60, which indicates moderate difficulty in social, occupational, or school functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition, Text Revision 34 (2000).

Moreover, we find that the ALJ's characterization of Bailey's GAF as "quite high" did not form the basis of any of his conclusions. Accordingly, we will not remand on this basis.

## D. The ALJ's Consideration of Medication Side Effects

Bailey also argues that the ALJ erred in assessing his ability to work because the ALJ disregarded the side effects of his medications. "The side effects of medications can have a significant impact on an individual's ability to work and therefore, should figure in the disability determination process." *Varney v. Secretary of Health & Human Servs.*, 846 F.2d 581, 585 (9th Cir. 1988); *see also, Porch v. Chater*, 115 F.3d 567 (8th Cir. 1997).

Here, the ALJ did consider Bailey's statements about the side effects of his medication. ALJ Kraybill noted that while Bailey indicated that he had no medication side effects on his Disability Report, he later stated that he could not cook because his medication makes him fall asleep. (R. 20). The ALJ also made several other observations about Bailey's credibility. In particular, the ALJ noted inconsistencies in Bailey's statements about when he last worked, about his living situation and about his daily activities such as his ability to do housework and go shopping. *Id.* These observations find ample support in the record. *Id.* Additionally, Bailey's medical records do not reveal complaints of drowsiness from his medication. Based on Bailey's inconsistent statements, the ALJ found that Bailey's allegations with respect to his limitations, including those caused by side effects of his medication, were not totally credible. (R. 20, 24).

Because the ALJ is best positioned to evaluate the credibility of a witness, we reverse the ALJ's credibility finding only if it is "patently wrong." *Powers v. Apfel*, 207

F.3d 431, 435 (7th Cir. 2000). Here, as ALJ Kraybill noted, the record is riddled with inconsistent statements by Bailey. Consequently, we cannot conclude that the ALJ's credibility finding is patently wrong. The ALJ properly considered and rejected Bailey's allegations of medication side effects and therefore, we will not remand on this basis.

## BAILEY'S MOTION FOR REMAND

Bailey also filed a motion for remand. In that motion, Bailey argues that new x-ray evidence of bone spurs in his heels warrants a remand pursuant to sentence six of 42 U.S.C. § 405(g). Sentence six of § 405(g) permits the court to remand the case for further consideration "but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993). To prevail on this issue, Bailey must establish that the evidence satisfies the requirements of newness, materiality, and good cause. *Id.* Materiality requires "reasonable probability" that the ALJ would have reached a different conclusion had the evidence been considered. *Id.*

Here, Bailey seeks to admit December 2003 x-ray reports of his lower leg and foot indicating the presence of bilateral heel spurs. Bailey contends that because the x-ray reports post-date the Commissioner's decision, the evidence meets the new and good cause requirements. He also contends that this evidence is material because the absence of x-rays showing heel spurs was a factor in the ALJ's decision to deny the claim. However, evidence is not material if it addresses only a claimant's condition after the ALJ issued his decision. *Chapman v. Barnhart*, 189 F. Supp. 2d 795, 805 (N.D. Ill. 2002). Indeed, the Seventh Circuit has held that medical records "postdating the

hearing" and that "speak only to [the applicant's] current condition, not to his condition at the time his application was under consideration by the Social Security Administration" do not meet the standard for new and material evidence. *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005) (citing *Kapusta v. Sullivan*, 900 F.2d 94, 97 (7th Cir.1989)).

The December 2003 x-ray reports do not constitute "material" evidence for purposes of a potential remand pursuant to 42 U.S.C. § 405(g) because they do not reflect Bailey's condition at the time his application was under consideration by the Commissioner. *Schmidt*, 395 F.3d at 742. Those x-rays were taken more than eighteen months after the May 2002 hearing. Furthermore, an October 1999 x-ray which was presented to the ALJ at the hearing revealed no heel spurs. (R. 162-63). Because Bailey failed to establish that the new evidence is material, his motion for remand pursuant to sentence six of 42 U.S.C. § 405(g) is denied.

**Conclusion**

For the reasons set forth above, Bailey's motion for summary judgment is granted, the Commissioner's motion for summary judgment is denied and Bailey's motion for remand pursuant to sentence six of 42 U.S.C. § 405(g) is denied. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion. It is so ordered.

**ENTER:**

**MICHAEL T. MASON**
**United Stated Magistrate Judge**

**Dated: May 13, 2005**